In re Bryan J. McGINNIS, Jr., Debtor.

CSR, INC., Plaintiff,

v.

Bryan J. McGINNIS, Jr., Defendant.

Bankruptcy No. 88–12369.
Adv. No. A–89–1076.

United States Bankruptcy Court,
E.D. Texas,
Beaumont Division.

Dec. 12, 1989.

Pam Wilson, Van Gilder & Alenik, Houston, Tex., for plaintiff CSR, Inc.

Robert L. Thomas, Beaumont, Tex., for defendant/debtor Bryan James McGinnis, Jr.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

This matter comes before the Court on a Complaint by CSR, Inc., (Plaintiff), to de-

termine the dischargeability of its scheduled debt. To the Complaint the Debtor, (Defendant), has filed a Motion to Dismiss under Bankruptcy Rule 7012. The Motion to Dismiss is based on Defendant's claim that the Complaint to Determine Dischargeability is time-barred pursuant to Bankruptcy Rule 4007(c). Defendant has also asked for sanctions against Plaintiff, alleging that the Complaint to Determine Dischargeability is so groundless as to require this Court to award Defendant attorney fees and costs for its having to mount a defense. This Opinion constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and disposes of all issues before the Court in this adversary proceeding.

## FINDINGS OF FACT

The findings of fact are made in a light most favorable to the Plaintiff CHARLOTTE SMITH REPORTING, ("CSR"), INCORPORATED.

1. On October 27, 1988, Bryan James McGinnis, Jr., ("Debtor") filed his Original Petition for Relief under Chapter 7 of the Bankruptcy Code, and scheduled CSR, Inc., as a creditor.

2. On October 31, 1988, notice was given of the Court's Order setting the first date for the meeting of creditors pursuant to 11 U.S.C. § 341(a) as November 23, 1988.

3. The first order established the last day for filing a complaint to determine dischargeability of any debt under 11 U.S.C. § 523(c) as sixty (60) days after the first date set for the meeting of creditors pursuant to 11 U.S.C. § 341(a), or January 22, 1989.

4. On November 23, 1988, at the first meeting of creditors, the Trustee announced a conflict of interest and the meeting was adjourned.

5. On December 20, 1988, the Clerk of the Court gave notice of the appointment of a new Trustee and of the rescheduling of the first meeting of creditors to February 6, 1989. The notice rescheduling the first meeting of creditors instructed the parties to "Please Disregard the Notice for the First Meeting of Creditors...." Plaintiff received notice on December 20, 1988.

6. The notice of December 20, 1988, was mute as to its effect on the sixty (60) day period in which to file a complaint to determine dischargeability.

7. The notice of December 20, 1988, did not establish a different last day for filing a complaint to determine dischargeability of any debt under 11 U.S.C. § 523(c).

8. On February 24, 1989, approximately thirty-three (33) days after the last date established pursuant to the original notice of the first meeting of creditors for filing a complaint to determine the dischargeability of any debt pursuant to 11 U.S.C. § 523(c), CSR, Inc., filed its Complaint To Determine Dischargeability of Debt in this adversary proceeding under 11 U.S.C. § 523(a)(4).

## DISCUSSION AND CONCLUSIONS OF LAW

The time period in which to file a complaint under 11 U.S.C. § 523(c) to determine the dischargeability of a debt is specifically dealt with thru application of Bankruptcy Rule 4007(c) which provides that

"A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the *first date set* for the meeting of creditors held pursuant to § 341(a). The Court shall give all Creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the Court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired." (emphasis supplied)

The caselaw surrounding Rule 4007(c) indicates that disputes are to be settled by following the plain language of the rule. *In re Shelton*, 58 B.R. 746 at 749 (Bankr.N.D.Ill.1986) (The time limitations of Rule 4007 and the procedure for extending them are set in stone); *In re Leroy*, 55 B.R. 666 (Bank.M.D.Penn.1985) (First date set for meeting of creditors and not date meeting is actually held, is date to be used to deter-

mine timeliness of filing complaints objecting to dischargeability of debts); *In re Horob*, 54 B.R. 693 (Bankr.D.N.D.1985) (Time prescribed by Bankruptcy Rule 4007(c) for filing of complaint requesting dischargeability determination is absolute unless extended by motion made prior to expiration of the 60–day period); *In re Reppert*, 84 B.R. 37 (Bankr.E.D.Pa.1988) (Sixty-day period for filing complaint to determine dischargeability of debt runs from first day set for creditors' meeting, rather than from first date such meeting is actually held).

Plaintiff CSR, Inc., while acknowledging the 60 day limitation period of Rule 4007(c) maintains that the December 20, 1988 order of the Court giving notice of the second meeting of creditors was vague and misleading in that it contained operative language instructing them to disregard previous notices i.e. the notice for the first meeting of creditors. Plaintiff's position is that by generating a notice instructing the parties to disregard other notices the notice of the first meeting of creditors was rendered nugatory and with it the starting point for the limitations period in which to file complaints to determine dischargeability of a debt. In sum, Plaintiff's position is that the 60 day period began to run as of the date set for the rescheduled meeting of creditors. A review of recent caselaw on this topic leaves the Court with the conclusion that Plaintiff's position is not well-founded.

In 1987 the Fifth Circuit Court of Appeals addressed this same issue in *Neeley v. Murchison*, 815 F.2d 345 (5th Cir.1987). In *Neeley*, the Court held that a creditor's reliance on a blank in the notice of the first meeting of creditors where the date for the first meeting should have been specified, as well as reliance on misinformation from the bankruptcy clerk's office that no dischargeability deadline had been set was misplaced. In holding that the time period to file objections to dischargeability of a debt had run the Court suggested that mere knowledge of the filing of a bankruptcy put the onus on the creditor "to protect his rights." *Id.* at 347.

The court's logic was two-fold. First, the court placed strong emphasis on policy considerations. The court was influenced by the language of Bankruptcy Rule of Procedure 9006(b)(3) which explicitly excepted Rule 4007(c) from time enlargements except "to the extent and the conditions stated in [Rule 4007(c)]." A reading of Rule 4007(c) reveals that time enlargements can only be granted on motion of party before the limitations period has run. The court reasoned that the strict nature of Rule 4007(c) "evince[s] a strong intent that the participants in bankruptcy proceedings be assured that, with the set period of 60 days, they can know which debts are subject to an exception to discharge." *Id.* at 346. Second, the Court read 11 U.S.C. § 523(a)(3)(B) as standing for the only exception to the general rule of Rule 4007(c); under 11 U.S.C. § 523(a)(3)(B) a debt is not automatically discharged if the debt was neither listed or scheduled and the creditor had no notice or actual knowledge of the case in time for filing a complaint to determine dischargeability. Since in *Neeley* the creditor had actual knowledge of the filing of debtor's bankruptcy the Court was unwilling to excuse compliance on the part of the creditor with Rule 4007(c). *See Matter of Frankina*, 29 B.R. 983 (Bankr.E.D.Mich. 1983) (Creditor is not excused from compliance with Rule 4007(c) if creditor had actual notice of debtor's bankruptcy before the 60 day filing period expired).

In the last several years, several other bankruptcy courts have grappled with this issue. A review of these cases indicates that almost without exception the courts have held that failure to abide by the 60 day limitations period in Rule 4007(c) is not to be excused. In *In re Price*, 79 B.R. 888 (9th Cir. BAP 1987) the court held that an "unscheduled creditor with actual notice of the bankruptcy must inquire as to the bar date for filing a nondischargeability complaint" or risk discharge of the claim if the bar date runs in the interim. *Id.* at 891. The court held that "the responsibility to inquire into the deadline for filing a 523(c) complaint is not so burdensome as to outweigh the increasing need for the expeditious judicial administration of bankruptcy

cases." *Id.* at 893. In *In re Sam,* 94 B.R. 893 (Bankr.W.D.La.1988) the court went one step further in holding that an unscheduled creditor with actual knowledge of debtor's bankruptcy has a duty of prompt inquiry and investigation in order to protect his interests vis-a-vis any time bar limitations on filing complaints objecting to dischargeability of debts.

Similarly, two 1987 cases dealt with the issue of duplicate time bar notices resulting from venue changes of the bankruptcy case. In *In re Lochrie,* 78 B.R. 257 (9th Cir. BAP 1987) a time bar notice on a complaint to determine dischargeability was issued both before and after the case was granted a change in venue. Unfortunately, the creditor chose to rely on the time bar period contained in the second notice. In its holding, the Court held that the second time bar notice was erroneously sent out and that the 60 day period had run based on the initial time bar notice. In making its determination the court spoke of the "strong presumption [that should be made] in favor of discharge and a fresh start for the honest debtor." *Id.* at 259. Under similar facts, the court in *In re Lewis,* 71 B.R. 633 (Bankr.N.D.Ill.1987) came to the same conclusion: "The change of venue can not turn back the clock for the objecting creditors. Plaintiff's reliance on the [second] computer notice is unjustified." While acknowledging that "this result is perhaps harsh, its application in this case is clearly not. The rules are an absolute statute of limitations and must be interpreted as such." *Id.* at 636.

In light of the holdings of previous courts on this matter this Court is convinced that the responsibility lay on Plaintiff to determine the period for properly filing the Complaint to Determine Dischargeability. A review of the jurisprudence would have made it abundantly clear to Plaintiff's counsel that the only prudent course of action was to file the Complaint or to file a Request for Extension within the first 60 days following the first date set for the meeting of Creditors. The Ninth Circuit in the *Matter of Gregory,* 705 F.2d 1118 (9th Cir.1983) at page 1123 stated "... whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have lead. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant of it." The Bankruptcy Appellate Panel of the Ninth Circuit in the *Price* case cited above quoted from *In re Alton,* 64 B.R. 221 (Bankr.M.D.Fla.1986) the *Alton* Court's language used in rejecting a Creditor's due process argument and distinguishing *Mullane v. Central Hanover Bank and Trust Company,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) states: "It needs no elaborate discussion to point out the obvious, that everyone is supposed to know what the law is and is especially true if a party complaining about the lack of notice is an attorney, who actually was served with a notice of a pendency of the Chapter 11 case. Clearly he was charged with the duty to ascertain the rules which govern the rights of Creditors to assert a claim of fraudulent conduct against the Debtor."

This Court is left with the conviction that a review of the above jurisprudence by Plaintiff's attorney upon receipt of the December 20, 1988, notice from the clerk's office would have required him to either file the Complaint within the ample time that he had left before January 22, 1989, or seek an extension of time within which to file within that same time period. Plaintiff's apparent interpretation of the second notice as superseding Rule 4007(c) and the clear jurisprudence cited above is unwarranted and is fatal to Plaintiff's position.

It is the holding of this Court that Plaintiff CSR, Inc., has failed to timely file its complaint to determine dischargeability of its debt from Debtor and that Plaintiff's complaint should be DISMISSED with prejudice.

In addition to the Motion to Dismiss under Bankruptcy Rule 7012 Defendant has filed a Motion for Sanctions under Bankruptcy Rule 9011. The Motion for Sanctions requests attorney fees and expenses incurred by Debtor in defending a Motion for Relief from Stay which has previously been decided by this Court and attorney

fees for defending the Complaint to Determine Dischargeability which this Court holds today should be DISMISSED. The Court has examined the Rule 9011 Motion filed by Defendant and finds it to be wholly without merit.