**In re Ming Yu PANNELL d/b/a Rockport Inn and d/b/a South Campus Apartments, Debtor.**

**Russell DOUCETTE, Appellant,**

v.

**Ming Yu PANNELL, Appellee.**

**Civ. A. No. 4–91–746–A.**

United States District Court, N.D. Texas, Fort Worth Division.

Feb. 5, 1992.

See also 95 B.R. 55.

Jeff Philipp Prostok, Cantey & Hanger, Fort Worth, Tex., for debtor.

Thomas Franklin Harkins, Jr., Gandy Michener Swindle Whitaker & Pratt, Fort Worth, Tex., for appellant.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

This action comes before the court as an appeal from an order entered by the United States Bankruptcy Court, Northern District of Texas, Fort Worth Division, the Honorable Massie Tillman presiding. The court, having reviewed the briefs of appellant, Russell Doucette ("Doucette"), and appellee, Ming Yu Pannell ("debtor"), the record on appeal and applicable authorities, has determined that the order from which appeal is taken must be reversed and judgment rendered in favor of Doucette.

### Jurisdiction

This is an appeal from an order granting debtor's motion to dismiss Doucette's complaint for exception to discharge in Adversary No. 491–4154 under Case No. 487–40576–MT–7 in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. This court's jurisdiction exists pursuant to 28 U.S.C. § 158(a).

### Underlying Facts and Proceedings

On March 2, 1987, debtor filed a voluntary petition under Chapter 11 in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. Debtor did not list Doucette as a creditor on her bankruptcy schedules.[1] The bankruptcy court's docket sheet reflects the filing of a "CERTIFICATE of Service on Firt [sic] Meeting Notice" on March 25, 1987, and a "TRUSTEE'S REPORT at 341 Meeting" on June 17, 1987. Hence, it appears that the first meeting of creditors took place on or before June 17, 1987. Therefore, the deadline for filing a complaint to

determine dischargeability under 11 U.S.C. § 523(c) would have been August 16, 1987, at the latest. *See* Bankr.R. 4007(c).

Doucette made his first appearance in the Chapter 11 bankruptcy case on November 4, 1987, when he filed a motion to require the trustee to abandon assets. The motion was set for hearing on January 26, 1988, and on February 11, 1988, an agreed order was entered regarding the requested abandonment.

On March 7, 1988, Doucette filed a motion to lift stay, which was granted by default order entered March 31, 1988. The motion reflected Doucette's contentions that he was the son and heir at law of Johnny Edward Pannell ("decedent") who died November 12, 1984; that debtor had attempted to hide from the bankruptcy court and probate court Doucette's existence and outstanding interest in the estate of decedent; and that most, if not all, of the assets listed by debtor on her various bankruptcy schedules represented community property of debtor and the deceased. The motion requested that the stay be lifted so that Doucette could pursue his fraud claims against debtor in probate court. Neither the motion to lift stay nor the default order addressed the issue of determining the dischargeability of debt, assuming Doucette prevailed in his probate court action. The motion for relief did provide, however, that Doucette would not execute on any judgment obtained, except as against the bond posted by debtor as administratrix of the probate estate, without leave of the bankruptcy court.

Doucette pursued his action against debtor in probate court, where he filed a second amended complaint on or about July 21, 1988.[2] By order signed September 20, 1988, the probate court declared that: (1) Doucette was an heir at law of decedent and (2) debtor knew Doucette was decedent's heir at the time she represented to

---

1. The record does not reflect, and debtor does not dispute, that debtor never amended her bankruptcy schedules to list Doucette as a creditor, even after the conversion to a Chapter 7 proceeding.

2. The complaint reflects that Doucette had filed, on November 10, 1987, his application for declaration of heirship and for partition and distribution. Neither party offers any explanation as to how Doucette received notice of debtor's Chapter 11 bankruptcy proceeding.

the court that her daughter was decedent's only child. The court ordered that, because of her fraud, debtor be removed as independent administratrix and that Doucette be appointed successor administrator upon his furnishing an appropriate bond. In subsequent findings of fact and conclusions of law, the probate court specifically determined that debtor had committed fraud by swearing under oath that the decedent had been married only once, was never divorced, had only one child, Kim Pannell, and that all heirs of decedent had requested independent administration of decedent's estate. The probate court rendered its final judgment on May 25, 1989, granting Doucette judgment against debtor in the amount of $250,000.00.[3]

While the probate court proceeding was pending, on September 29, 1988, the Chapter 11 trustee filed a motion to convert debtor's case to a Chapter 7 bankruptcy. The case was converted by order entered November 23, 1988. A notice of first creditors' meeting was entered December 29, 1988, setting January 20, 1989, as the meeting date for the first creditors' meeting, April 20, 1989, as the bar date for filing claims, and March 21, 1989, as the filing deadline for dischargeability complaints. There is no evidence that Doucette was notified by debtor or anyone else of the conversion or the new deadlines.

On June 29, 1989, the probate court signed its second findings of fact and conclusions of law. After a delay due to further post-trial motions, the probate court signed an amended final judgment on April 17, 1990, re-incorporating, affirming and making final the May 25, 1989, judgment. Debtor then appealed from the probate court's judgment.

During the pendency of the probate appeal, debtor's counsel notified Doucette's counsel by telephone that debtor intended to proceed to obtain a discharge in bankruptcy. Upon receiving that notice, Doucette determined to proceed with his complaint for exception to discharge, which

was filed July 3, 1991, and a proof of claim, which was filed July 11, 1991. Debtor responded by filing a motion to dismiss Doucette's complaint on July 19, 1991. Doucette filed his response to the motion to dismiss on July 25, 1991. Thereafter, on August 9, 1991, Doucette filed a motion for summary judgment. Debtor received her discharge from the bankruptcy court on August 22, 1991. Debtor filed a response to Doucette's motion for summary judgment on August 29, 1991.

The motion to dismiss and motion for summary judgment were set for hearing on September 4, 1991. On that date, the bankruptcy judge announced that he would grant debtor's motion to dismiss. Because that motion was granted, the court did not proceed to hear arguments or to consider the motion for summary judgment. The bankruptcy court's findings of fact and conclusions of law and the order granting debtor's motion to dismiss Doucette's complaint for exception to discharge were entered September 30, 1991.

### The Bankruptcy Court's Findings of Fact and Conclusions of Law

The bankruptcy court's findings of fact and conclusions of law are fairly succinct and are here set forth in full.

#### Findings of Fact

1. On or about March 2, 1987 [debtor] filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code. [Doucette] was not listed as a creditor on the debtor's bankruptcy schedules.

2. On or about November 4, 1987, [Doucette] filed a Motion to Require the Trustee to Abandon Assets in the debtor's bankruptcy. An Agreed Order for relief was entered on or about February 12, 1988.

3. On or about March 7, 1988, [Doucette] filed a Motion for Relief from Stay in debtor's bankruptcy in order to proceed with various claims against debtor

---

**3.** The court also granted Doucette judgment in the amount of $100,000.00 plus interest against the bonding company that had acted as surety on the bond filed by debtor to insure her performance as administratrix of the decedent's estate.

in Tarrant County Probate Court. A Default Order Granting Motion for Relief from Stay was entered on March 31, 1988.

4. On or about November 23, 1988, the bankruptcy was converted to a Chapter 7 and pursuant to Bankruptcy Rule 4007(c), the last date for filing a proof of claim was set for April 20, 1989, and the deadline for filing dischargeability and discharge complaints was set for March 21, 1989.

5. No notice of appearance was filed by [Doucette] in accordance with Bankruptcy Rules 2002 and 9010.

6. [Doucette] failed to timely request an extension from the Court to file either a proof of claim or complaint concerning debtor's discharge. On or about July 3, 1991, [Doucette] filed his Complaint for Exception to Discharge. In the Complaint, filed pursuant to 11 U.S.C. § 523(a)(2)(A) and (C) Doucette stated that he did not file the Complaint previously "because he did not want to unnecessarily complicate and exacerbate the various legal proceedings, and, therefore, was awaiting the full completion of that judicial determination of the validity, nature and amount of his claim, as to which he had sought and obtained relief from this Honorable Court to have adjudicated in the aforementioned probate proceeding." Thereafter, on or about July 11, 1991, [Doucette] filed his Proof of Claim.

7. On or about July 19, 1991, debtor filed her Response and Motion to Dismiss [Doucette's] Complaint for Exception to Discharge.

8. Debtor received her discharge from this Court on August 22, 1991.

9. The findings of fact, as appropriate, shall also constitute conclusions of law.

### Conclusions of Law

#### I.

A creditor has sufficient notice of bankruptcy proceedings even if there is no formal notice given of the filing deadlines, if he receives notice in time to act prior to the filing deadlines. This is true even in cases alleging fraud. *In re Compton*, 891 F.2d 1180, 1184 (5th Cir. 1990). If a complaint is not timely filed, a debt is discharged. *Matter of Bercier*, 934 F.2d 689 (5th Cir.1991). The Bankruptcy Court cannot extend the time for filing a dischargeability complaint unless the creditor files a motion for extension of time prior to the deadline. *Neel[e]y v. Murchison*, 815 F.2d 345, 346 (5th Cir. 1987).

#### II.

Bankruptcy Rule of Procedure 4007(c) requires that nondischargeability complaints be filed within 60 days from the first date set for the meeting of creditors. *In re Sam*, 894 F.2d 778 (5th Cir. 1990).

#### III.

There was no discretion involved in setting the bar dates in this case. This Court concludes that because the bar date is set by statute, there is no denial of due process where the creditor is aware of the bankruptcy, but has not received notice of the deadline, and has no actual knowledge of the deadline.

#### IV.

These conclusions of law, as appropriate shall also constitute findings of fact.

### Issues on Appeal

Doucette sets forth fourteen issues on appeal, which he then discusses in ten sections of his brief. His argument is broken down as follows:

(1) The conversion of a Chapter 11 case to a Chapter 7 case should not make a debt that was nondischargeable thereupon become dischargeable.

(2) A creditor should be permitted to file a complaint to determine dischargeability under 11 U.S.C. § 523(c) at any time if the basis of nondischargeability is 11 U.S.C. § 523(a)(3)(B).

(3) Alternatively, conversion of a Chapter 11 case to a Chapter 7 case is "the establishment of a new case," re-

quiring new notice to the creditor if 11 U.S.C. § 523(a)(3)(B)'s application to the debt is to be avoided by the debtor.

(4) Alternatively, due process is violated by barring a dischargeability complaint when the creditor is not notified of the conversion of a case to Chapter 7 until after the statutory deadline has passed, having no reason to "monitor" the estate because the debt was already nondischargeable in the prior Chapter 11 case when the creditor learned of it.

(5) Alternatively, to avoid constitutional infirmities, the proper giving of the § 523(c) bar date notice required by the Bankruptcy Rules is "the necessary predicate and trigger" to the running of the bar deadlines.

(6) Alternatively, the running of the Rule's bar date is not jurisdictional, but only a right of the debtor that is waived or lost under estoppel or unclean hands by the debtor's violation of her duties to list the creditor and give the creditor notice of the bar dates.

(7) Alternatively, the bankruptcy court erred in not construing the creditor's Chapter 11 case motion for relief from stay as a timely motion for an extension to file his dischargeability complaint upon the conclusion of the probate proceedings.

(8) Alternatively, the debtor was barred by *res judicata* from challenging the nondischargeability of the debt, having not raised the dischargeability of the debt as a defense in the probate proceeding before final judgment.

(9) The bankruptcy court erred in not entering summary judgment for creditor that the debt was nondischargeable, in that the findings of the probate court operated as *res judicata* and/or collateral estoppel as to the 11 U.S.C. § 523(a)(2)(A) issues.

(10) The bankruptcy court erred in not allowing creditor's counsel to cite applicable legal authorities at the hearing.

As the court sees it, the primary issue is whether a creditor who has notice, albeit untimely, of a Chapter 11 bankruptcy proceeding is deemed to have notice of the subsequent conversion of the case to a Chapter 7, and hence, of the new filing deadlines.

### Standard of Review

To the extent the appeal presents questions of law, the bankruptcy court's judgment is subject to *de novo* review. *Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.)*, 785 F.2d 1249, 1252 (5th Cir.1986). Findings of fact, however, will not be set aside unless clearly erroneous. *Memphis–Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 783 F.2d 1283, 1287 (5th Cir.1986). A finding is clearly erroneous, although there is evidence. to support it, when the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* The mere fact that this court would have weighed the evidence differently if sitting as the trier of fact is not sufficient to set aside the bankruptcy court's order if that court's account of the evidence is plausible in light of the record viewed in its entirety. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

### What Notice Must the Creditor Have?

■ As previously stated, the key issue is whether "the case" of which the creditor must have notice is the case in which final relief, *i.e.* discharge or plan confirmation, is granted to the debtor. Although the Code does not define the term, both the wording of the Code as well as case law support Doucette's position on this issue.

Section 523 enumerates the exceptions to a debtor's right to discharge in a Chapter 7 proceeding, as well as other proceedings not here relevant. That section provides, in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the

creditor to whom such debt is owed, in time to permit—

.    .    .    .    .

(B) if such debt is of a kind specified in paragraph (2), (4) or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge *of the case* in time for such timely filing and request ... (emphasis added).

Thus, the language itself indicates that the case the creditor must have knowledge of is the case in which relief will be granted to the debtor.

Case law also supports this conclusion. Case after case recognizes that "where a creditor receives any notice that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and ignores the proceedings to which the notice refers at its peril." *Grossie v. Sam (In re Sam),* 94 B.R. 893, 897 (Bankr.W.D.La.1988), *aff'd,* 894 F.2d 778 (5th Cir.1990); *Lawrence Tractor Co. v. Gregory (In re Gregory),* 705 F.2d 1118, 1123 (9th Cir.1983). There is no question that the "effect of a conversion [from a Chapter 11 proceeding to a Chapter 7] is the establishment of a new case with rights, duties and opportunities that did not previously exist." *Huntington Nat'l Bank v. Schwartzman (In re Schwartzman),* 63 B.R. 348, 352 (Bankr. S.D. Ohio 1986). *See, e.g., Goralnick v. Bromberg (In re Goralnick),* 81 B.R. 570, 572 (Bankr. 9th Cir.1987) (noting that the new meeting of creditors required upon conversion of a Chapter 11 to a Chapter 7 is not a continuation or extension of the meeting of creditors in the previous proceeding, but rather a separate and distinct meeting); *F & M Marquette Nat'l Bank v. Richards,* 780 F.2d 24, 25 (8th Cir.1985) (conversion constitutes an order for relief and generates a new time period for filing dischargeability complaints).

■ The point of § 523(a)(3)(B) is that a creditor who has notice in time to take appropriate action to protect its claim should not be allowed to lie behind the log. It is not enough, however, that the creditor have knowledge of a Chapter 11 proceeding, because the creditor is deemed to have notice only of whatever it would have discovered at the time it received such notice.[4] *In re Sam,* 94 B.R. at 897; *Byrd v. Alton (In re Alton),* 837 F.2d 457, 459 (11th Cir. 1988). Rather, the creditor must have knowledge of the conversion in order to be able to protect its rights. *See Woodson v. Tosenberger (In re Tosenberger),* 67 B.R. 256, 259 (Bankr.N.D. Ohio 1986). One reason that notice of conversion is crucial is that creditors are less likely to file dischargeability complaints in Chapter 11 proceedings than in Chapter 7 proceedings where their rights are determined by liquidation. *F & M Marquette,* 780 F.2d at 26; *In re Goralnick,* 81 B.R. at 572–73.

■ In the bankruptcy court, the burden was on debtor to show that Doucette had knowledge or notice of her Chapter 7 proceeding in sufficient time to protect his interests. *In re Sam,* 94 B.R. at 895. Debtor made no attempt to meet her burden, other than to direct the bankruptcy court's attention to Doucette's motion to lift stay, which reflected only Doucette's knowledge of the Chapter 11 proceeding. The bankruptcy court made no finding with regard to Doucette's knowledge or notice, *vel non,* of the Chapter 7 proceeding. The record would not have supported a finding in favor of debtor on this issue.

Based on the foregoing, the court finds that the bankruptcy court's order dismissing Doucette's complaint must be reversed. The court does not reach Doucette's due process, waiver, or extension of time arguments, discussed in sections 4, 5, 6 and 7 of his brief. The court agrees with Doucette that if it was debtor's position that Dou-

---

**4.** Cases discussing § 523(a)(3)(B) uniformly state that the only burden on the creditor is to inquire to determine the date of the first meeting of creditors and the bar date for filing dischargeability complaints. *In re Sam,* 894 F.2d at 781; *Sanchez Ramos v. Compton (In re Compton),* 891 F.2d 1180, 1187 (5th Cir.1990); *Neeley v. Murchison,* 815 F.2d 345, 347 (5th Cir.1987).

cette had notice of her Chapter 7 proceeding, then his claims would have been barred at some point during the pendency of the probate action and debtor should have amended her answer therein to raise that defense. *See* Doucette's brief at 34, ¶ 11 [sic]. There could hardly be a more blatant case of a debtor abusing the judicial system in an attempt to defraud a creditor. *See Moureau v. Leaseamatic, Inc. (In re Moureau),* 542 F.2d 251 (5th Cir.1976).

 Doucette vigorously argues that this court should now grant his motion for summary judgment, since no further purpose would be served by remanding this case for further litigation. *Weber v. Dell,* 804 F.2d 796, 798 n. 2 (2nd Cir.1986), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). Debtor had an opportunity and an obligation to raise every legal theory and to come forward with all facts necessary to raise a genuine issue of material fact to preclude summary judgment in Doucette's favor. *National Credit Union Admin. v. Michigan Nat'l Bank,* 771 F.2d 154, 161 (6th Cir.1985). Debtor chose to hang her hat on the legal argument that Doucette's complaint was not timely filed and is not now entitled to another bite at the apple. The court is satisfied that debtor had a full and fair opportunity to present pertinent evidence. *See Hartford Accident & Indem. Co. v. Gulf Ins. Co.,* 837 F.2d 767, 773 (7th Cir.1988). Doucette has demonstrated that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law that the debt owed him is nondischargeable. An appellate court may adjust its relief to the exigencies of the case in accordance with equitable principles. *MGPC, Inc. v. Department of Energy,* 763 F.2d 422, 434 (Temp.Emer.Ct.App.), *cert. denied,* 474 U.S. 823, 106 S.Ct. 76, 88 L.Ed.2d 62 (1985); *Ithaca College v. National Labor Relations Board,* 623 F.2d 224, 229 (2nd Cir.), *cert. denied,* 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980). Consideration of a motion for summary judgment by an appellate court is appropriate where the lower court has granted a motion to dismiss. *Block v. Meese,* 793 F.2d 1303, 1307, 1309 (D.C.Cir.

1986). Accordingly, the court will grant Doucette's motion for summary judgment.

Finally, Doucette asks for an advisory opinion with regard to the "local local" rules of the bankruptcy court. The court declines to entertain this request.

The court ORDERS that the bankruptcy court's September 30, 1991, order granting debtor's motion to dismiss Doucette's complaint be, and is hereby, reversed. The court further ORDERS, ADJUDGES and DECREES that Doucette's motion for summary judgment be, and is hereby, granted. To the extent that the bankruptcy court's order of August 22, 1991, purports to grant debtor a discharge for the claim owed to Doucette, such order is VACATED.